RAÚL R. LABRADOR
Attorney General
State of Idaho

MARK W. OLSON, ISB #7555
Deputy Attorney General
E-mail: mark.olson@ag.idaho.gov
Capital Litigation Unit
P.O. Box 83720
Boise, Idaho 83720-0010
Telephone: (208) 334-4539
Facsimile: (208) 854-8074

Attorneys for Respondent

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| KENDRICK DEWAYNE ROBINSON, | ) | CASE NO. 1:24-cv-00614-DKG |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | RESPONDENT'S ANSWER AND |
| | ) | BRIEF IN SUPPORT OF |
| BREE DERRICK, Warden | ) | DISMISSAL OF PETITION FOR |
| | ) | WRIT OF HABEAS CORPUS |
| Respondent. | ) | |
| | ) | |

COMES NOW, Respondent, Bree Derrick, Warden ("state"), by and through her attorney, Mark W. Olson, Deputy Attorney General, Capital Litigation Unit, and hereby Answers Petitioner's ("Robinson") Petition for Writ of Habeas Corpus (Dkt. 1), and moves for dismissal of the same.

# I.
## INTRODUCTION AND GENERAL RESPONSES

Robinson is currently in the custody of the State of Idaho, pursuant to a Judgment of Conviction entered in the District Court of the Fifth Judicial District of the State of Idaho, County of Twin Falls, on May 4, 2021, by the Honorable Roger B. Harris, after a jury found Robinson guilty of trafficking in methamphetamine (400 grams or more), I.C. § 37-2732B(a)(4)(C). (State's lodging A-2, pp.256-259.)

All allegations and claims made by Robinson are denied by the state unless specifically admitted herein. Further, Robinson's habeas petition does not state grounds, which if true, would entitle him to federal habeas corpus relief. Because Robinson's Petition for Writ of Habeas Corpus was filed after April 24, 1996 (Dkt. 1), the state specifically asserts that the standards and law contained in the Anti-Terrorism and Effective Death Penalty Act ("AEDPA") apply to his petition. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). Even if the AEDPA did not apply, Robinson's claims fail under *de novo* review.

# II.
## FACTUAL AND PROCEDURAL BACKGROUND

In its memorandum decision and order summarily dismissing Robinson's post-conviction petition, the state district court summarized the underlying facts as follows:

> On October 24, 2019, at or around 8:18 PM, MST, petitioner Kendrick Robinson was pulled over by Twin Falls County Sheriff Christopher Boyd (Boyd) on U.S. Highway 93 in Twin Falls County for an observed speeding violation. As Boyd approached Robinson's vehicle to discuss the reason for the traffic stop, Robinson rolled down his window. When Robinson did so, Boyd noticed the faint odor of marijuana emanating from the vehicle. Boyd explained the reason for the stop and asked Robinson for standard identification information, including his driver's license, proof of insurance and vehicle registration. Robinson was able to provide Boyd with his California issued driver's license, but could not provide proof of insurance or a vehicle registration. Robinson explained that the vehicle

was a rental car he had borrowed from his brother; however, he did not have a copy of the rental agreement or any other documentation showing that he had the right to possess and/or drive the vehicle. While having this conversation with Robinson, Boyd noticed that the passenger seat area of Robinson's vehicle was littered with food wrappers and empty drink bottles. He inquired of Robinson's travels (allegedly a road trip from California to Washington State, then back to California via Las Vegas, Nevada). Boyd also noted that he could not see any baggage and/or clothing in the passenger area of the vehicle other than a light jacket and a small duffle bag in the back seat, which appeared to contain very little. Based upon the length and duration of the road trip as described by Robinson, Boyd found these observations to be suspicious.

Having smelled the faint odor of marijuana emanating from the vehicle, and not believing that Robinson's travel history matched with what he could see in the vehicle, Boyd asked Robinson if there was anything illegal in his vehicle, like marijuana or other drugs. Robinson denied having anything illegal in the vehicle. Again, being suspicious of Robinson's answers and believing his observations did not match Robinson's road trip explanation; Boyd got on his radio and asked that a K9 unit be dispatched to the traffic stop as he ran Mr. Robinson's information and the information associated with the vehicle Robinson was driving. As Boyd was still processing Robinson's driver information and trying to ascertain whether Robinson had lawful possession of the vehicle he was driving, Twin Falls Police Department (TFPD) Officer Braisch (Braisch) and his drug dog Enzo arrived on scene.

Braisch informed Robinson he was going to have his dog (Enzo) conduct a free air sniff around the exterior of the vehicle and had Robinson exit the vehicle. Enzo gave a positive alert on the vehicle indicating the potential presence of drugs and/or drug related contraband inside the driver compartment of the vehicle. At that point, Robinson again denied that there were any illegal substances in the vehicle but acknowledged that most of the people with whom he associated smoked marijuana.

Boyd informed Robinson that because Enzo positively alerted on the vehicle, he had probable cause and the legal authority to search the vehicle, and that he was going to search the vehicle for controlled substances. Before actually beginning his search of the vehicle, Boyd conducted a pat down search of Mr. Robinson for officer safety purposes to make sure he did not have any weapons present on his person. Although Boyd failed to find any weapons in Robinson's pockets, he did feel large lumps in each of Robinson's front-of-the-pants-pockets. Boyd said the lumps felt rectangular and were large enough that he could actually see that they were wads of cash as he looked into the top of the pockets without

actually putting his hand into Robinson's pockets. Boyd did not reach into Robinson's pockets nor remove the cash at this point.[1]

Boyd then searched the vehicle, during which he found four bags of methamphetamine located in a shoebox on the floorboard behind the passenger seat of the vehicle. Robinson was notified of what was found, placed under arrest and then thoroughly searched prior to being transported to the Twin Falls County Jail. It was during this search of Robinson's person that the Deputy reached into and removed the cash from Robinson's pockets.

The total weight of the methamphetamine found in the vehicle was approximately 1,889.4 grams – just over four pounds. Mr. Robinson was charged with trafficking in methamphetamines.

(State's lodging C-2, pp.1129-1131.)

Prior to trial, Robinson filed a motion to suppress the evidence recovered by police after the traffic stop. (State's lodging A-2, pp.67-68, 83-88.) He asserted that law enforcement illegally extended the duration of the stop. (State's lodging A-2, pp.83-88; *see also* pp.89-106 (State's response to suppression motion, with attached police affidavit of probable cause for the underlying charge).)

After a hearing (State's lodging A-3), the trial court denied the motion (State's lodging A-2, pp.110-122). The court concluded that Robinson lacked standing to challenge the search in light of his tenuous connection to the rental car he was driving (State's lodging A-2, pp.113-117), but that, in any event, Officer Boyd had reasonable suspicion to briefly extend the traffic stop (by approximately two minutes before the drug dog was dispatched) for a drug investigation due to: the odor of burnt marijuana; the presence of multiple food wrappers and empty water and energy drink bottles in the vehicle; Robinson's inconsistent and contradictory story about where

---

[1] [Footnote in original] The total amount of cash on Robinson's person was $8,493.00. Robinson stated that he had recently been to the bank and had withdrawn money so that he could gamble with his brother in Las Vegas.

he was from, where he had traveled, and where he was going; the lack of sufficient luggage to support Robinson's assertion that he was traveling from California to Washington and then Las Vegas; and that he was purportedly driving a rental car but could not provide any paperwork or other evidence establishing this, or that he was authorized to drive the vehicle. (State's lodging A-2, pp.118-121.)

After a trial, the jury found Robinson guilty as charged. (State's lodging A-2, p.227.) The trial court imposed a unified 30-year sentence with 10 years fixed. (State's lodging A-2, pp.256-258.) On direct appeal, Robinson asserted only that his sentence was excessive. (State's lodging B-1.) The Idaho Court of Appeals affirmed the district court's sentencing determination (State's lodging B-4); the Idaho Supreme Court denied Robinson's petition for review (State's lodging B-6.)

In August 2022, Robinson filed, through counsel, a post-conviction petition raising numerous assertions of ineffective assistance of trial counsel. (State's lodging C-2, pp.5-18.) Within the claims, Robinson asserted that his trial counsel was ineffective for failing to develop and introduce certain specified evidence at his suppression hearing, and at his trial. (State's lodging C-2, pp.7-14.) The State moved for summary dismissal. (State's lodging C-2, pp.1038-1045.) Robinson filed a memorandum in opposition to the State's motion, which also included, as attachments, evidence supporting Robinson's post-conviction claims. (State's lodging C-2, pp.1052-1099.) The state district court granted the State's motion for summary dismissal, concluding that Robinson failed to present establish a prima facie case entitling him to an evidentiary hearing on any of his claims. (State's lodging C-2, pp.1129-1150; *see also* State's lodging C-3 (transcript of hearing on state's motion for summary dismissal).)

Robinson appealed and challenged the state district court's summary dismissal of his claims regarding his counsel's *trial performance* — but did not challenge the court's summary dismissal of his claims regarding his counsel's *suppression motion performance*. (State's lodging D-1.) In an unpublished opinion, the Idaho Court of Appeals affirmed the state district court's summary dismissal order, concluding that Robinson's trial counsel exercised reasonable professional judgment in determining trial strategy, and that Robinson thus failed to demonstrate that the state district court erred in dismissing his challenged claims. (State's lodging D-4.) Robinson filed a petition for review on the post-conviction appellate briefs he already submitted (State's lodging D-5), but the Idaho Supreme Court denied the petition (State's lodging D-6).

In December 2024, Robinson filed a habeas petition in federal district court, commencing this proceeding. (Dkt. 1.) Robinson raised two ineffective assistance of trial counsel claims, in which he asserts his trial counsel was ineffective for:

(1) failing to investigate and present evidence in support of his suppression motion that would have (a) established Robinson's standing to challenge officers' search of the car he was driving, and (b) impeached Officer Boyd's claim that he could smell marijuana;

(2) failing to investigate and present evidence at trial to corroborate his testimony and support his defense regarding the only contested yet essential element of the charge – whether he knew that methamphetamine was in the rental car.

(Dkt. 1, pp.8-12.)

This Court ordered the state to file an Answer or Pre-Answer motion. (Dk. 6, p.3.) The State files this Answer and Brief in Support of Dismissal of Robinson's habeas petition and both claims therein. The State contends that Claim 1 is procedurally defaulted because Robinson failed to raise it to the Idaho Supreme Court, the time to do so has now expired, and because no

cause and prejudice to excuse this default exists; that Claim 2 fails under AEDPA review; and that in the alternative, both claims fail under *de novo* review.

III.

## EXHAUSTION OF STATE REMEDIES

Robinson has exhausted state remedies in the sense that there are no available state procedures that exist for the proper presentation of any claims in his habeas petition which may not have been previously submitted to the Idaho Supreme Court. *See* I.A.R. 14.

IV.

## PROCEDURAL DEFAULT

Claim 1 in Robinson's habeas petition is procedurally defaulted because he failed to raise it to the Idaho Supreme Court, and the time to do so has now expired. This Court must therefore dismiss this claim unless Robinson can establish cause and prejudice or actual innocence.

A.     Claim 1 Is Procedurally Defaulted And Should Be Dismissed

       1.     Legal Framework For Exhaustion

Federal courts are barred from granting habeas relief unless the petitioner exhausts the remedies available in state court. 28 U.S.C. § 2254(b). The exhaustion requirement "reflects a policy of federal-state comity," *Picard v. Connor*, 404 U.S. 270, 275 (1971), which requires a petitioner to "'fairly presen[t]' federal claims to the state courts in order to give the State the 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (quoting *Picard*, 404 U.S. at 275). Exhaustion requires more than mere notice; rather, it must "be serious and meaningful." *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 10 (1992). The exhaustion requirement is not satisfied unless the claim has been fairly presented to the state's highest court. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

"Fair presentation" requires a petitioner to describe both the operative facts and legal theories upon which the federal claim is premised. *Gray v. Netherland*, 518 U.S. 152, 162-163 (1996); *Shumway v. Payne*, 223 F.3d 982, 987-988 (9th Cir. 2000). "Fair presentation" means more than a "mere similarity of claims" between the issues raised before the state's highest court and those raised in the federal petition. *Duncan*, 513 U.S. at 366; *Shumway*, 223 F.3d at 988. As discussed in *Gray*, 518 U.S. at 163, "it is not enough to make a general appeal to a constitutional guarantee as broad as due process to present the 'substance' of such a claim to a state court." Moreover, a petitioner must make more than a cursory reference to the claim before the state court or a "naked reference" to a constitutional provision. *Shumway*, 223 F.3d at 987. Rather, the federal basis of the claim before the state court must be "explicit either by citing federal law or the decisions of federal courts even if the federal basis is 'self-evident.'" *Lyons v. Crawford*, 232 F.3d 666, 668 (9th Cir. 2000), as amended, 247 F.3d 904 (9th Cir. 2001). Based upon *Duncan*, the degree of explicitness is "rigorous." *Id.* at 669.

2.    <u>Legal Framework Of State Procedural Bars</u>

A federal habeas petitioner has procedurally defaulted his claim if he could have raised his constitutional claim in state court but failed and is now barred from doing so by a state court rule. *Tacho v. Martinez*, 862 F.2d 1376, 1378 (9th Cir. 1988) (citing *Murray v. Carrier*, 477 U.S. 478, 485 (1986) and *Wainwright v. Sykes*, 433 U.S. 72, 86-87 (1977)). If a petitioner fails to seek direct review from a state's highest court, and the time has passed for such review, a procedural default exists even if review was afforded in the state's lower courts. *O'Sullivan*, 526 U.S. at 848; *Harmon v. Ryan*, 959 F.2d 1457, 1461 (9th Cir. 1992).

3.      Claim 1 is Procedurally Defaulted

In Claim 1, Robinson contends his trial counsel was ineffective by failing to investigate and present certain specified evidence in support of his unsuccessful suppression motion that would have, he asserts: (a) established his standing to challenge officers' search of the car he was driving, and (b) impeached Officer Boyd's suppression hearing testimony that he smelled marijuana coming from Robinson's vehicle prior to extending the traffic stop to deploy a drug dog. (Dkt. 1, pp.8-10.) This claim is procedurally defaulted and must be dismissed because Robinson failed to fairly present it to any Idaho appellate court, let alone the state's highest court, the Idaho Supreme Court.

Robinson raised a claim similar to Claim 1, asserting ineffective trial counsel assistance with respect to this suppression motion, in his state court post-conviction petition. (State's lodging C-2, pp.7-10.) However, after the state district court summarily dismissed this claim and Robinson's petition (State's lodging C-2, pp.1136-1140), Robinson did not attempt to raise this claim in his post-conviction appellate brief (State's lodging D-1). Instead, Robinson's post-conviction appellate brief raised only challenges to the state district court's summary dismissal of his *trial-based* assertions of ineffective counsel assistance, and did not reference any of his claims regarding the suppression motion. (*See* State's lodging D-1; *see also* State's lodging D-3 (Robinson's post-conviction appellate reply brief.)) Consequently, the Idaho Court of Appeals, in affirming the state district court's summary dismissal order, did not reference Robinson's suppression motion, or any claims of ineffective assistance pertaining to that motion. (*See* State's lodging D-4.)

Therefore, Robinson failed to fairly present Claim 1 to the Idaho Supreme Court. Because the time to do so has now expired (*see* I.A.R. 14), this claim is procedurally defaulted and must be dismissed unless Robinson can demonstrate cause and prejudice or actual innocence.

4.     To Overcome Dismissal Due To Procedural Default, Robinson Must Show Cause And Prejudice Or A Miscarriage Of Justice

When a procedural default bars litigation of a constitutional claim in state court, a state prisoner may not obtain federal habeas relief unless the prisoner shows: (1) a valid cause for the default and actual prejudice resulting from the alleged constitutional violation, or (2) that failure to consider the claims will result in a miscarriage of justice, also known as "actual innocence." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Murray*, 477 U.S. at 496; *Reed v. Ross*, 468 U.S. 1, 16-19 (1984).

a.     General Legal Standards Governing Cause And Prejudice

"Cause" has been described as something external to the petitioner:

[W]e think that the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.

*Coleman*, 501 U.S. at 753 (quoting *Murray*, 477 U.S. at 488). A petitioner's illiteracy, *pro se* status and/or mental deficiencies have all been found not to be an "external impediment preventing counsel from constructing or raising the claim." *Hughes v. Idaho State Bd. of Corrections*, 800 F.2d 905, 908-09 (9th Cir. 1986); *Tacho*, 862 F.2d at 1381.

"Prejudice" requires a petitioner to show more than the possibility of prejudice. *U.S. v. Frady*, 456 U.S. 152, 170 (1982). Rather, the petitioner must establish that any alleged error worked to his substantial disadvantage, infecting the entire trial. *Id.* In *Vansickel v. White*, 166

F.3d 953, 958 (9th Cir. 1999), the court implied that the prejudice prong of *Strickland v. Washington*, 466 U.S. 668 (1984), applies to the "prejudice" standard of procedural default. This standard requires Robinson to demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Vansickel*, 166 F.3d at 958-959 (quoting *Strickland*, 466 U.S. at 694).

The Ninth Circuit Court of Appeals has concluded that, prior to summary dismissal, a *pro se* petitioner must be given an opportunity to establish cause and prejudice such as to excuse a procedural default. *See Boyd v. Thompson*, 147 F.3d 1124, 1128 (9th Cir. 1998). If, in his response to the Respondent's Motion for Summary Dismissal, Robinson fails to establish cause and prejudice excusing his procedural default, his procedurally defaulted claims must be dismissed unless he demonstrates a fundamental miscarriage of justice.

      b.     <u>*Martinez v. Ryan*</u>

*In Martinez v. Ryan*, 566 U.S. 1, 4-18 (2012), the United States Supreme Court held that habeas petitioners may attempt to establish cause and prejudice for the procedural default of ineffective assistance of trial counsel claims where: (1) the state trial court did not appoint counsel in the initial-review collateral proceeding; or (2) appointed collateral proceeding counsel is ineffective in raising, or failing to raise, an ineffective assistance of trial counsel claim.

In *Trevino v. Thaler*, 569 U.S. 413, 423 (2013), the United Supreme Court described and clarified the *Martinez* cause and prejudice test as consisting of four necessary prongs: (1) the underlying claim of ineffective assistance of counsel must be a "substantial" claim (determining whether an IAC claim is substantial requires a federal court to examine the claim

under *Strickland*, 466 U.S. 668); (2) the "cause" for the procedural default consists of there being "no counsel" or "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" collateral review proceeding where the ineffective assistance of trial counsel claim could have been brought; and (4) state law requires that an ineffective assistance of counsel claim be raised in an initial-review collateral proceeding, or by "design and operation" such claims must be raised that way, rather than on direct appeal. The Idaho Supreme Court has recognized that federal habeas petitioners challenging Idaho convictions can satisfy the fourth *Trevino* prong and that "*Martinez* applies in Idaho." *Johnson v. State*, 395 P.3d 1246, 1261 (Idaho 2017).

However, in May 2022, in *Shinn v. Ramirez*, 596 U.S. 366 (2022), the United Supreme Court significantly limited the availability of *Martinez* as a means by which to overcome procedural default in federal habeas proceedings. In that case, the Court held that "under [28] § 2254(e)(2), a federal habeas court may not conduct an evidentiary hearing or otherwise consider evidence beyond the state-court record based on ineffective assistance of state postconviction counsel," including new evidence both to determine whether an underlying claim is "substantial," and "to assess cause and prejudice under *Martinez*," because "a *Martinez* hearing when the prisoner cannot satisfy AEDPA's demanding standards in § 2254(e)(2) would prolong federal habeas proceedings with no purpose," and "a federal habeas court may *never* needlessly prolong a habeas case particularly given the essential need to promote the finality of state convictions," *id*. at 382-390 (emphasis in original, quotes and citations omitted). The only exceptions to this bar to consideration of new evidence are if a claim relies on a new and retroactively applied rule of constitutional law; or when the claim relies on new facts that could

not have been previously discovered with due diligence by the petitioner and his or her attorney. 28 U.S.C. § 2254(e)(2)(A); *see also Ramirez*, 596 U.S. at 381-383.

In his habeas petition, Robinson does not cite *Martinez*, or attempt to satisfy the *Martinez* requirements as set forth above.[2] (*see* Dkt 1.) The state reserves the right to respond to any specific argument from Robinson regarding why *Martinez* may excuse the procedural default of Claim 1 (and to respond to any other "exceptions" to the procedural default Robinson may assert). However, the state submits that it is unlikely that Robinson can satisfy the *Martinez* exception, as narrowed by *Ramirez*, with respect to any of his habeas claims for several reasons.

*First*, as noted above, Claim 1, which asserts ineffective assistance of trial counsel in the context of Robinson's unsuccessful suppression motion, is substantially the same as a claim Robinson raised, through counsel, in his post-conviction petition. (State's lodging C-2, pp.7-10.) However, this claim, despite being developed and supported by evidence submitted to the state district court (State's lodging C-2, pp.7-10, 1054-1057, 1076-1078, 1091-1099), was not raised by Robinson's post-conviction appellate counsel (*see* State's lodgings D-1, D-3, D-4.) Therefore, the reason this Claim was not fairly presented to the Idaho Supreme Court, and is instead procedurally defaulted, was *post-conviction appellate counsel's* decision not to raise it. The *Martinez* exception expressly does not concern alleged attorney errors in types of proceedings other than the initial collateral (post-conviction) proceeding. *Martinez*, 566 U.S. at 16. Therefore, any purported alleged ineffectiveness with respect to post-

---

[2] Robinson did however, state that "[i]f the State raises the affirmative defense of procedural default as to [Claim 1], [he] will be able to show an exception to the doctrine of procedural default. (Dkt. 1, p.10.)

conviction appellate counsel, and post-conviction appellate counsel's decisions regarding which claims to raise on appeal, cannot satisfy the third prong of *Martinez*. *See Dixon v. Yordy*, 2017 WL 1097174, *11 (D. Idaho 2017) (unpublished) ("any [habeas] claims that *were* included in the original petition but were not included in the post-conviction appeal are defaulted as well - likely because of appellate counsel's strategic decision to not include them in the appeal, rather than any fault of the attorney who handled the post-conviction matter in the state district court." (emphasis in original); *Hernandez v. Richardson*, 2025 WL 815009, *6 (D. Idaho 2025) (same) (appeal filed).

*Second*, pursuant to *Ramirez*, Robinson is limited to the evidence in the state-court record to attempt to demonstrate cause and prejudice. This evidence, of course, was not sufficient for Robinson to obtain even an evidentiary hearing in state district court. (State's lodging C-2, pp.1136-1140.)

*Third*, it is unlikely Robinson will be able to show that Claim 1 is "substantial," as required by *Martinez*. For the reasons set forth below, in the State's alternative argument as to why Claim 1 fails even under *de novo* review, Claim 1 lacks merit and is not a substantial claim.

If in his response to the state's Motion for Summary Dismissal, Robinson fails to establish cause and prejudice excusing his procedural default, Claim 1 must be dismissed unless he can demonstrate actual innocence.

c.    General Legal Standards Governing Miscarriage Of Justice

Application of the fundamental miscarriage of justice exception "makes clear that a claim of 'actual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the

merits." *Herrera v. Collins*, 506 U.S. 390, 404 (1993). To establish a miscarriage of justice by virtue of actual innocence, a petitioner must demonstrate that, "in light of all the evidence," "it is more likely than not that no reasonable juror would have convicted him." *Schlup v. Delo*, 513 U.S. 298, 327, 328 (1995). "Actual innocence" means factual innocence, not mere legal insufficiency. *Sawyer v. Whitely*, 505 U.S. 333, 339 (1992).

## V.
## SPECIFIC ANSWER AND MERITS BRIEFING REGARDING PETITIONER'S CLAIMS

A.      Introduction

Even if Claim 1 is not procedurally defaulted, the state asserts that Robinson has failed to demonstrate he is entitled to relief pursuant to a *de novo* review of that claim. Robinson has also failed to demonstrate he is entitled to relief on Claim 2 under AEDPA review, because he cannot show that the Idaho Court of Appeals' rejection of this claim was contrary to, or constituted an unreasonable application of, clearly established United States Supreme Court precedent, or was based upon an unreasonable factual determination. In the alternative, Claim 2 also fails under *de novo* review.

B.      Standards Of Law Regarding Habeas Claims And AEDPA

Under 28 U.S.C. § 2241(c), a petition for habeas corpus will be granted only if the petitioner alleges and proves facts showing he is in custody in violation of the Constitution, laws or treaties of the United States. Habeas relief is further restricted by AEDPA, which permits relief only if the state courts' adjudication of a claim:

> (1)      resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

1.      The Contrary To And Unreasonable Application Clauses

The "contrary to" and "unreasonable application" clauses of 28 U.S.C. § 2254(d)(1) have independent meaning. *Bell v. Cone*, 535 U.S. 685, 694 (2002). A state court's decision is contrary to clearly established federal law, as determined by the United States Supreme Court, if it (1) "applies a rule that contradicts the governing law set forth in our cases," or (2) "confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent." *Price v. Vincent*, 538 U.S. 634, 640 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000)).

A state court's decision is an unreasonable application of clearly established federal law, as determined by the United States Supreme Court, when "the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. An "*unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id.* at 410 (emphasis in original). Robinson must establish the state courts' application of clearly established federal law, as determined by the United States Supreme Court, was "objectively unreasonable." *Wildman v. Johnson*, 261 F.3d 832, 837 (9th Cir. 2001). Moreover, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180-181 (2011).

The standard "is difficult to meet," granting authority to issue the writ only in cases "where there is no possibility fairminded jurists could disagree that the state court's decision

conflicts with [the Supreme Court's] precedents." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). Robinson "must show that the state court's ruling on the claim . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* This does not require citation of Supreme Court cases by the state court or even awareness of such cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002). "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004).

Though the source of clearly established federal law must come only from the holdings of the United States Supreme Court, circuit precedent may be persuasive authority for determining whether a state court decision is an unreasonable application of Supreme Court precedent. *Duhaime v. Ducharme*, 200 F.3d 597, 600-601 (9th Cir. 2000). However, circuit law may not be used "to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] Court has not announced." *Marshall v. Rodgers*, 569 U.S. 58, 64 (2013). In other words, circuit law can help determine whether application of a rule was unreasonable, but not what the rule is.

   2.   Determination Of The Facts And State Court Findings

Factual findings fall within two AEDPA provisions, §§ 2254(d)(2) and 2254(e)(1). Addressing § 2254(d)(2), the Supreme Court has explained, "[A] decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual

grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The Court has further held, "'[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" *Burt v. Titlow*, 571 U.S. 12, 18 (2013) (quoting *Wood v. Allen*, 558 U.S. 290, 293 (2010)). Rather, § 2254(d)(2) requires that state courts be accorded substantial deference. "If reasonable minds reviewing the record might disagree about the finding in question, on habeas review that does not suffice to supersede the trial court's determination." *Wood*, 558 U.S. at 301 (quotes, citations, brackets, ellipsis omitted). A petitioner must show "that the trial court had no permissible alternative but to" reach the opposite conclusion. *Rice v. Collins*, 546 U.S. 333, 341-342 (2006).

This standard "erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court," which "was meant to be" because "AEDPA requires a state prisoner to show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error beyond any possibility for fairminded disagreement." *Burt*, 571 U.S. at 19-20 (quotes, citations, ellipsis, brackets omitted). "[I]f permissible inferences could be drawn either way, the state court decision must stand, as its determination of the facts would not be unreasonable." *Hunterson v. Disabato*, 308 F.3d 236, 250 (3rd Cir. 2002).

Moreover, § 2254(d)(2) is "daunting" and will be "'satisfied in relatively few cases "because an 'unreasonable determination of the facts' does not, itself, necessitate relief." *Byrd v. Workman*, 645 F.3d 1159, 1172 (10th Cir. 2011) (quoting *Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004)). "Rather, in order to receive relief under this clause, the petitioner must show

that the state court's adjudication of the claims 'resulted in a decision that was *based on* an unreasonable determination of the facts in light of the evidence presented.'" *Id.* (quoting § 2254(d)(2)) (emphasis in original).

Recently, the Ninth Circuit has explained that, irrespective of whether a claim is governed by § 2254(d)(2), "§ 2254(e)(1)'s application is not limited to claims adjudicated on the merits. Rather, it appears to apply to all factual determinations made by state courts. Thus, we defer to the [Idaho courts'] factual determinations unless [Robinson] provides clear and convincing evidence that its factual findings were wrong." *Kirkpatrick v. Chappell*, 950 F.3d 1118, 1131-32 (9th Cir. 2020). "Clear and convincing evidence requires greater proof than preponderance of the evidence. To meet this higher standard, a party must present sufficient evidence to produce 'in the ultimate factfinder an abiding conviction that the truth of its factual contentions are [sic] highly probable.'" *Sophanthavong v. Palmateer*, 378 F.3d 859, 866 (9th Cir. 2004) (alteration in original) (quoting *Colorado v. New Mexico*, 467 U.S. 310, 316 (1984)).

3.     Claims Which Are Reviewed *De Novo*

"[W]hen it is clear that a state court has not reached the merits of a properly raised issue, [this Court] must review it *de novo*." *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002). However, "determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning." *Richter*, 562 U.S. at 98. Even if a claim must be reviewed *de novo*, "under AEDPA, factual determinations by the state court are presumed correct and can be rebutted only by clear and convincing evidence." *Pirtle*, 313 F.3d at 1167-1168. However, if the state court's decision was based on an unreasonable determination of the facts, then the Court is

not limited by § 2254(d)(1), but proceeds to a *de novo* review of the petitioner's claims, which may include consideration of evidence outside the state court record. *Maxwell v. Roe,* 628 F.3d 486, 494–495 (9th Cir. 2010).

C.      Under AEDPA or *De Novo* Review, Robinson Is Not Entitled To Relief On Claim 2

In Claim 2, Robinson contends that his trial counsel was ineffective for failing to investigate and present certain specified evidence at trial to corroborate his testimony and support his defense regarding the only contested element of the methamphetamine trafficking charge – whether he knew that methamphetamine was in the rental car. (Dkt. 1, pp.10-12.)

Specifically, Robinson contends his trial counsel should have presented evidence that: (a) Robinson's brother Lawrence authorized him to drive the rental car (to support the defense implication that Robinson was utilizing the rental car for a "legitimate" reason, rather than to traffic drugs); (b) Robinson was speaking to a friend on the phone when he was pulled over (to rebut the State's implication that Robinson was talking to a drug connection, as is common during traffic stops preceding drug trafficking arrests); (c) Robinson withdrew large amounts of cash from his bank accounts prior to the traffic stop (to explain the large quantity of cash found on his person); and (d) Robinson possessed numerous casino loyalty "player cards" (to support the defense assertion that Robinson was simply traveling to Vegas to gamble, as he told police officers). (*Id*.; *see also* State's lodging C-2, pp.10-14, 1057-1066 (corresponding claim as raised in Robinson's post-conviction petition and response to state's summary dismissal motion).)

Robinson challenged the state district court's summary dismissal of this claim in his post-conviction appeal. (State's lodging D-1, pp.15-28.) The Idaho Court of Appeals analyzed and rejected the claim on its merits. (State's lodging D-4.) Robinson cannot show that the Court of

Appeals' rejection of this claim was contrary to, or constituted an unreasonable application of, clearly established United States Supreme Court precedent, or was based upon an unreasonable factual determination; he therefore cannot show that he is entitled to relief on this claim under AEDPA.

Ineffective assistance of counsel claims are governed by *Strickland*, which is "clearly established" for purposes of 28 U.S.C. § 2254(d). *Canales v. Roe*, 151 F.3d 1226, 1229 n.2 (9th Cir. 1998). To prevail on a claim of ineffective assistance of counsel, Robinson must show his counsel's representation was deficient and that the deficiency was prejudicial. *Strickland*, 466 U.S. at 687.

The first element "requires [a] showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. Review under the *Strickland* deficient-performance prong is "highly deferential." *Miles v. Ryan*, 713 F.3d 477, 486 (9th Cir. 2013) (quoting *Strickland*, 466 U.S. at 689). Counsel's performance is measured against "prevailing professional norms" at the time of representation. *Avena v. Chappell*, 932 F.3d 1237, 1248 (9th Cir. 2019). In the process, a court "indulg[s] a strong presumption" that counsel's conduct fell "within the wide range of reasonable professional assistance." *Knowles v. Mirzayance*, 556 U.S. 111, 124 (2009) (quoting *Strickland*, 466 U.S. at 689). "[S]trategic choices made after thorough investigation" are "virtually unchallengeable." *Id.* (quoting *Strickland*, 466 U.S. at 690).

The second element requires Robinson to demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A

reasonable probability is a probability sufficient to undermine confidence in the outcome," *Strickland* 466 U.S. at 694, which "requires a substantial, not just conceivable, likelihood of a different result," *Pinholster*, 563 U.S. at 189 (internal quotations and citation omitted). The reviewing court need not address both prongs of *Strickland* if an insufficient showing is made under only one prong. *Strickland*, 466 U.S. at 69.

The "ultimate focus" of the *Strickland* standard is "the fundamental fairness of the proceeding whose result is being challenged." *Andrews v. Davis*, 944 F.3d 1092, 1108 (9th Cir. 2019) (en banc) (quoting *Strickland*, 466 U.S. at 696).

Overcoming *Strickland*'s "high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). Establishing ineffective assistance of counsel under § 2254(d) "is all the more difficult. The standard created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Id.*; *see also Hampton v. Shinn*, 2025 WL 1873261, *17-29 (9th Cir. 2025) (not yet final) (applying AEDPA's "doubly deferential" standard of review to numerous ineffective assistance of trial counsel claims, and recognizing that "*Strickland*'s deferential standard is magnified by AEDPA.")

In rejecting Robinson's claim on its merits, the Idaho Court of Appeals recognized and reasonably applied *Strickland*, as well as Idaho precedent applying ineffective assistance of trial counsel standards consistent with those set forth above. (State's lodging D-4, pp.2-3, 5.) The Court both analyzed and identified the defects in Robinson's claim as a whole, and also specifically discussed each of the four categories of evidence which Robinson asserts his trial counsel should have utilized at trial. (State's lodging D-4, pp.4-8.)

With respect to Robinson's ineffective assistance of trial counsel claim as a whole, the Court of Appeals reiterated the state district court's conclusion that Robinson's trial counsel's challenged decisions "reflected strategic choices," and that it was not "deficient for trial counsel to fail to introduce evidence which, even if it corroborated some of Robinson's testimony, did not call into question the material elements of the offense charged." (State's lodging D-4, p.5; quoting State's lodging C-2, p.1142).) Further, the Court of Appeals properly recognized that Robinson's claim was weakened by his failure to allege or demonstrate that his trial counsel's decision not to utilize the specified evidence was "based on inadequate preparation, ignorance of the relevant of law, or other shortcomings capable of objective evaluation." (State's lodging D-4, pp.7-8.)

Even had the Idaho Court of Appeals ended its analysis there, its rejection of Claim 2 would have constituted a reasonable application of *Strickland*, precluding federal habeas relief under AEDPA. However, the Court additionally (as did the district court), specifically addressed the specified evidence that Robinson asserted would have resulted in his acquittal if presented.

    1.   <u>Rental Car Agreement</u>

At trial, the State proffered testimony from Officer Braisch that drug traffickers often use third-party rental cars, as Robinson did in this case. (State's lodgings A-5, pp.123-124; D-4, p.5.) In his post-conviction and federal habeas petitions, Robinson asserted that his brother's rental car agreement and repair invoice for his brother's car, if utilized at trial, would have corroborated his story that he was instead driving the rental car for a legitimate reason, in that he borrowed it from his brother after repairs to his brother's car (repairs which necessitated the rental to begin with), were completed early. (State's lodgings C-2, pp.10-11, 1057-1059; D-4, pp.5-6.)

As the State argued (State's lodging D-2, pp.9-14), and as the Court of Appeals recognized (State's lodging D-4, p.6), not only was this evidence merely corroborating and did not call into question the material elements of the charged offense, it may have hurt as much as helped Robinson's defense. The rental agreement indicated a pickup date of September 30, 2019 (State's lodging C-2, p.1081), which was long after the vehicle repair invoice indicated that Robinson's brother's car was dropped off on August 19, 2019 (State's lodging C-2, p.1079). This suggests that the car repair was not the reason for the rental. The rental car agreement also contained an "anticipated" return date of October 19, 2019 (State's lodging C-2, p.1081), which was three days before Robinson's brother picked up his car from the repair shop (State's lodging C-2, p.1079), and five days before Robinson was arrested (State's lodging A-2, pp.15-20). This contradicts Robinson's suggestion that there was ample time remaining on the rental to engage in an extended road trip to Washington and Las Vegas. Further, even assuming the truth of Robinson's and his brother's assertions regarding the rental car, this does not preclude a jury inference that Robison's brother was *also* involved in methamphetamine trafficking.

Therefore, it is apparent that Robinson could not establish a successful *Strickland* ineffective assistance of trial counsel claim based upon his counsel's decision not to utilize the rental car agreement or repair invoice at trial.

2. The Gray Declaration

In the state post-conviction proceeding, Robinson submitted a declaration from his friend Brittany Gray (State's lodging C-2, pp.1088-1090), who asserted that she was on the phone with Robinson at the time the underlying traffic stop was initiated. Robinson asserted that trial testimony from Gray to this effect would have refuted Officer Boyd's trial testimony that

Robinson appeared to be attempting to make multiple phone calls during the traffic stop, calls which the state posited could have been made to inform Robinson's trafficking cohorts that he had been stopped — which Officer Boyd testified was a common behavior of drug traffickers. (C-2, pp.13, 1063-1064; D-4, p.6; *see also* State's lodging A-4, pp.150-151 (Officer Boyd's relevant trial testimony).) Robinson also asserted that such evidence could have corroborated his own trial testimony that he was speaking with Gray at the time he was pulled over. (State's lodging A-5, pp.175-177, 256-257.)

The Idaho Court of Appeals reasonably adopted the state district court's observation that, "[w]hether Robinson was on the phone at the time of the traffic stop, and/or to whom he was talking, are not facts this Court finds to be material nor something that would have changed the facts upon which the jury relied to convict him." (State's lodgings C-2, pp.1144-1145; D-4, p.6.) Further, as the Court of Appeals also reasonably opined (State's lodging D-4, p.6), "nothing in the Gray declaration forecloses that Robinson also talked to other individuals on the phone during the stop."

The Gray declaration, like the other evidence proffered by Robinson in the post-conviction proceeding, thus did not establish *Strickland* deficient performance or prejudice.

3.  Banking Records

Robinson was found in possession of over $8,000 in cash following his arrest; both Officer Boyd and Officer Braisch testified at trial that this amount of cash, as well as the types of denominations which made up the cash, was indicative of drug trafficking. (State's lodgings A-4, pp.154-155, 175-185; A-5, pp.83-88; 127-128; D-4, p.7.) The State also introduced, as evidence

at trial, Facebook posts made by Robinson from February 2019 which indicated that he had a checking account with a balance of less than $200. (State's lodgings A-5, pp.271-277; D-4, p.7.)

In the post-conviction proceeding, Robinson argued that his trial counsel was ineffective for failing to obtain and introduce bank records (State's lodging C-2, pp.1072-1075) which, he asserts, would have corroborated his trial testimony (State's lodging A-5, pp.153-156, 163-168, 213-216, 261-264), that the money found in his possession was intended for gambling and to impress women, and that he had withdrawn the money from his savings account, rather than from his checking account (State's lodgings C-2, pp.11-13, 1059-1063; D-4, p.7).

However, as the Court of Appeals recognized (State's lodging D-4, p.7; *see also* State's lodging C-2, pp.1142-1444 (state district court's rejection of this claim)), the proffered bank records depicted larger balances and withdrawals only through June 2019 — approximately four months prior to the date of Robinson's arrest (State's lodging C-2, pp.1072-1075). This limited the corroborating value of the records, and did not explain why Robinson possessed so much cash several months later. Further, as the state district court additionally observed (State's lodging C-2, p.1143-1144), even assuming deficient performance, there is no reasonable probability that the banking records depicting larger balances and cash withdrawals several months prior to his arrest would have convinced a jury that Robinson was not trafficking in methamphetamine, in light of the State's evidence of Robinson's guilt. Therefore, the bank records did not establish a valid *Strickland* ineffective assistance of trial counsel claim.

4.    Casino Loyalty "Player Cards"

Robinson asserted that trial utilization of his Las Vegas casino loyalty "player cards" would have corroborated his trial testimony that he was merely on a gambling-destination road

trip when he was arrested (State's lodgings C-2, pp.14, 1064-1065; D-4, p.7), and his specific trial testimony that he was a regular gambler who obtained amenities through these casino loyalty programs (State's lodging A-5, pp.147-148). However, as the Court of Appeals reasonably recognized, such evidence would not have called into question any of the material elements of the trafficking charge. (State's lodging D-4, p.7; *see also* State's lodging C-2, pp.1145-1146 (state district court's rejection of this claim).) Evidence that Robinson is an enthusiastic gambler would not have disproved or even cast doubt on the State's allegation that he was also trafficking methamphetamine.

Ultimately, for all of the forgoing reasons, the Idaho Court of Appeals reasonably applied *Strickland* and related caselaw and applicable constitutional standards in concluding that Robinson failed to establish a prima facie *Strickland* ineffective assistance of trial counsel claim. Accordingly, the district court did not err in summarily dismissing Robinson's claim.

Given the deference afforded to the state court's adjudication of Robinson's federal Claim 2 under AEPDA, Robinson cannot show that the Idaho Court of Appeals' rejection of his claim constituted an unreasonable application of *Strickland* or any other applicable United States Supreme Court precedent, or was based upon an unreasonable factual determination. For all of the same reasons, Claim 2 fails even under *de novo* review. Claim 2 should therefore be dismissed.

D.     In the Alternative Claim 1 Fails Even Under *De Novo* Review

As argued above, Claim 1 is procedurally defaulted and must be dismissed because Robinson failed to fairly present it to the Idaho Supreme Court, and the time to do so has now expired. In the alternative, Claim 1 fails even under *de novo* review. The state adopts and

incorporates the relevant and applicable ineffective assistance of trial counsel standards and precedent as set forth above.

In Claim 1, Robinson contends that his trial counsel was ineffective failing to investigate and present certain specified evidence in support of his unsuccessful suppression motion that would have, he asserts: (a) established his standing to challenge officers' search of the car he was driving; and (b) impeached Officer Boyd's suppression hearing testimony that he smelled marijuana prior to extending the traffic stop to deploy a drug dog. (Dkt. 1, pp.8-10.)

Specifically (and consistently with the manner in which Robinson raised this claim in the state court post-conviction proceeding) (State's lodging C-2, pp.7-8, 1054-1056), Robinson contends that he could have effectively established standing to contest the police search of his vehicle if his counsel presented the rental car agreement, and testimony from Robinson's brother Lawrence, who purportedly would have testified that that he rented the car and gave Robinson permission to drive it (Dkt. 1, pp.8-9; State's lodging C-2, pp.1076-1078.)

Robinson also contends that he could have successfully impeached Officer Boyd's suppression hearing testimony that he smelled marijuana coming from Robinson's vehicle (an observation which contributed to the trial court's conclusion that there was reasonable suspicion to briefly extend the traffic stop), if his trial counsel submitted evidence that: (1) Officer Braisch, who arrived at the scene later to deploy the drug dog, did not smell marijuana coming from Robinson's vehicle; and (2) Robinson did not personally use marijuana, including that the rental car agency did not charge a cleaning fee for smoking in the vehicle, that Robinson offered to submit to a drug test upon his arrest, that Robinson never failed a drug test at work, and that

several of Robinson's former work supervisors did not know him to be a marijuana user. (Dkt. 1, pp.9-10; State's lodging C-2, pp.8-10, 1056-1057, 1091-1099.)

Even if Claim 1 was not procedurally defaulted, it would fail under *de novo* review. The state adopts and incorporates the reasoning of the district court from its order summarily dismissing this claim (State's lodging, pp.1136-1140), which the State summarizes and adopts as follows:

Initially, Robinson's assertion that his trial counsel could have submitted evidence to establish standing to challenge the search of his vehicle was essentially rendered moot by the nature of the trial court's suppression motion denial order. While the trial court concluded that Robinson lacked standing (State's lodging A-2, pp.113-117), it then *also* rejected Robinson's suppression motion on its merits (State's lodging A-2, pp.117-121). Therefore, even had Robinson's trial counsel established standing, the motion to suppress would have, for the reasons discussed below, been unsuccessful regardless. (State's lodging C-2, p.1136-1137 (state district court's corresponding conclusion).)

Even had Robinson's trial counsel submitted the car rental agreement and Lawrence's testimony at the suppression hearing, it remains speculative, at best, whether Robinson could have successfully established standing. The state acknowledges that in *Byrd v. United States*, 584 U.S. 395 (2018), the United States Supreme Court made it somewhat easier for unauthorized drivers of rental cars to establish standing. In *Byrd*, the Court invalidated bright-line state rules precluding standing for such drivers (as previously existed in Idaho, *State v. Mann*, 394 P.3d 79 (Idaho 2017)), and held that "the mere fact that a driver in lawful possession or control of a rental car is not listed on the rental agreement will not defeat his or her otherwise reasonable

expectation of privacy." *Byrd*, 584 U.S. at 411. However, *Byrd* also explicitly rejected any notion that "legitimate presence alone" affords a defendant with a reasonable expectation of privacy. *Id.* at 404-405.

The Idaho appellate courts have not yet applied a *Byrd*-mandated fact-specific inquiry to determine whether an unauthorized rental car driver maintains a reasonable expectation of privacy in particular circumstances. Thus, lingering questions remain about the impact of different factors on such an analysis. For example, it is unclear whether Robinson's standing to challenge the search was impacted by the fact that the rental car agreement contained an "anticipated return" date of October 19, 2019 (State's lodging C-2, p.1081), five days before Robinson was stopped and arrested; or by Robinson's failure to produce, during the traffic stop, the rental agreement or any evidence that he had permission to drive the car. In light of the unsettled law in this area, Robinson cannot demonstrate that his trial counsel's failure to produce Lawrence's testimony constituted deficient performance, or that any such deficient performance prejudiced Robinson. *See Smith v. Singletary*, 170 F.3d 1051, 1054 (11th Cir. 1999) ("Ignorance of well-defined legal principles is nearly inexcusable. But, as an acknowledgment that law is no exact science, the rule that an attorney is not liable for an error of judgment on an unsettled proposition of law is universally recognized.") (citations and internal quotations omitted).

In any event, Robinson additionally cannot show that his trial counsel was ineffective for failing to produce evidence that would have purportedly impeached Officer Boyd's suppression hearing testimony that he smelled marijuana on his approach to Robinson's vehicle — testimony which contributed to the trial court's finding that the officers had reasonable suspicion to briefly

extend the traffic stop. (Dkt. 1, p.8; *see also* State's lodging A-2, pp.117-121; State's lodging A-3, pp.27-29, 32-34 (Officer Boyd's relevant suppression hearing testimony).)

By considering Officer Boyd's testimony about smelling burnt marijuana, the trial court implicitly made a credibility determination in Officer Boyd's favor. Robinson has presented no evidence which, if utilized by his counsel at the suppression hearing, would have altered this credibility determination. That Officer Braisch, who arrived 30 minutes[3] after the initial traffic stop began, would later testify that he did not smell marijuana coming from Robinson's vehicle (Dkt. 1, p.4; State's lodging A-5, pp.48-49), did not disprove, and was instead consistent with, Officer Boyd's suppression hearing testimony. Officer Boyd testified that the smell of burnt marijuana was "faint," was detectable only upon first approaching Robinson's vehicle after Robinson opened his car window, and that the smell quicky dissipated in the wind. (State's lodging A-3, pp.32-34.) It was thus not surprising that Officer Braisch did not smell marijuana from the car upon his arrival at the scene 30 minutes later.

In any event, the "faint" odor of marijuana perceived by Officer Boyd was just one of the factors which contributed to the trial court's conclusion that there existed reasonable suspicion to briefly extend the traffic stop. In addition to the smell of burnt marijuana, the trial court concluded that reasonable suspicion existed because of: (1) the presence of multiple food wrappers and empty water and energy drink bottles in Robinson's vehicle; (2) Robinson's inconsistent and contradictory story about where he was from, where he had traveled, and where he was going; (3) the lack of sufficient luggage to support Robinson's intimation that he was on

---

[3] The traffic stop occurred at (approximately) 8:18 p.m., Officer Boyd returned to his patrol vehicle after is initial contact with Robinson at 8:22 p.m., and Officer Baisch arrived at the scene at 8:46 p.m. (State's lodging A-2, pp.110-112.)

a lengthy road trip from California to Washington and then on to Las Vegas; and (4) the fact that Robinson was driving a rental car but could not provide any paperwork or other evidence establishing this or that he was actually authorized to drive the vehicle. (State's lodging A-2, pp.110-111, 118-121.)

The three declarations from Robinson's work supervisors (State's lodging C-2, pp.1091-1099), asserting that Robinson was not known to use marijuana during his employment, and never failed any work drug tests, would have also been of limited, if any, value to Robinson's chances of suppressing evidence. That Robinson was not known to his work supervisors to be a marijuana user does not disprove either that he used marijuana during this trip, or, as he suggested to the officers (*see* State's lodging C-2, pp.1130-1131), that the marijuana smell may have been residual from other people who had been in the vehicle, since "most of the people with whom [Robinson] associated smoked marijuana."

Likewise, evidence that the rental car company did not subsequently impose a cleaning fee for any smoking conducted in violation of the rental agreement (State's lodging C-2, p.1077), would have been of little, if any, benefit to Robinson. The faint detectable odor of burnt marijuana does not necessarily reveal that marijuana smoking occurred in the vehicle in a time recent enough to be perceivable by rental car staff at some unknown point in the future when the car was returned and detailed. Further, it is speculative how strict the rental car company is in enforcing smoking prohibition policies.

Finally, for similar reasons, any evidence that Robinson requested a drug test at the police station following his arrest, if such evidence exists[4], would also not have disproven Officer Boyd's suppression hearing testimony. Robinson, facing methamphetamine trafficking charges, had little to lose in making such an offer, even if he had recently consumed marijuana. In any event, for the reasons noted above, even a negative drug test would not have disproven Officer Boyd's testimony — Officer Boyd detected only the faint odor of burnt marijuana, which (because of the possibility of the odor being residual, and other people being in the vehicle), is not determinative of any conclusion that Robinson recently smoked marijuana.

Overall, in these circumstances, and as the state district court concluded with respect to this claim, Robinson cannot establish either, that his trial counsel was deficient in failing to introduce the proffered evidence, or that that any deficient performance resulted in prejudice, i.e., the failure of his motion to suppress.

Claim 1 is procedurally defaulted because Robinson failed to fairly present it to the Idaho Supreme Court; however, in any event, and for the foregoing reasons, the claim fails under *de novo* review because Robinson cannot demonstrate *Strickland* deficient performance or prejudice with respect to any aspect of the claim. Claim 1 should therefore be dismissed.

---

[4] Robinson did not attach any such evidence to his post-conviction petition (State's lodging C-2, pp.8-9), or to his brief in response to the state's motion for summary dismissal (*see* State's lodging C-2, pp.1054-1057, 1072-1099).

## VI.
## AVAILABILITY OF STATE COURT RECORDS

The State has prepared the state court record lodging pursuant to Rule 5 of the Rules Governing Section 2254 Cases VII, and will file its notice of lodging and copies of these records with this Court on Monday, July 14, 2025.[5]

## VII.
## CONCLUSION

WHEREFORE, the state prays:

1.      That the writ be denied, or, if granted, that all relief be denied;

2.      That the Court dismiss the petition with prejudice.

DATED this 11th day of July, 2025.

/s/ Mark W. Olson
MARK W. OLSON
Deputy Attorney General
Capital Litigation Unit

---

[5] This Court's Initial Review Order permits the State to lodge the relevant state court records "within a reasonable time thereafter" the filing of its responsive pleading. (Dkt. 6, p.3.)

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on or about the 11th day of July, 2025, I caused to be served a true and correct copy of the foregoing document by the method indicated below, postage prepaid where applicable, and addressed to the following:

Craig Durham                              _____ U.S. Mail
Ferguson Durham, PLLC                      _____ Hand Delivery
223 N. 6th Street, Suite 325               _____ Overnight Mail
Boise, ID 83702                            _____ Facsimile
chd@fergusondurham.com                      X    Electronic Court Filing


*/s/ Mark W. Olson*
MARK W. OLSON
Deputy Attorney General
Capital Litigation Unit