UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

KENDRICK DEWAYNE ROBINSON,

Petitioner,

v.

BREE DERRICK,

Respondent.

Case No. 1:24-cv-00614-DKG

**MEMORANDUM DECISION AND ORDER**

In this habeas corpus matter, Idaho prisoner Kendrick Dewayne Robinson ("Petitioner" or "Robinson") challenges his Twin Falls County conviction for trafficking in methamphetamine. Dkt. 1. The Petition is now fully briefed and ripe for adjudication.

The Court takes judicial notice of the records from Petitioner's state court proceedings. *See* Fed. R. Evid. 201(b); *Dawson v. Mahoney*, 451 F.3d 550, 551 n.1 (9th Cir. 2006).

All parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings in this case in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. *See* Dkt. 5. Having carefully reviewed the record in this matter, including the state court record, the Court concludes that oral argument is unnecessary. *See* D. Idaho L. Civ. R. 7.1(d).

For the reasons explained below, the Court enters the following Order dismissing Claim I and denying habeas corpus relief on the merits of Claim II.

## BACKGROUND

The following facts of Petitioner's case, as described by the Idaho Court of Appeals, are presumed correct, as there is no clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1).

"Law enforcement stopped Robinson for speeding. Following an investigation, officers discovered over four hundred grams of methamphetamine and approximately $8,500 in cash" on Petitioner's person and in the rental car Petitioner was driving. He was charged with drug trafficking. *State's Lodging D-4* at 1.

The prosecution's theory at trial was that Petitioner "was operating as a 'mule' to transport drugs. The only contested element of the charge was whether Robinson knew about the drugs found in the car. The State offered testimony of the arresting officers who observed a number of indicia of drug trafficking during the stop." *Id*. at 1–2. These indicia included "that traffickers often use rental cars"; that "food wrappers and energy drink bottles" such as the ones in the car "may be associated with traffickers attempting to quickly get to their destination"; that Petitioner had "very little luggage"; that Petitioner made "phone calls to others in the operation during the traffic stop"; that Petitioner was nervous; and that Petitioner had "roughly $8,500 … in small bills in [his] pockets." *Id*. at 2.

Petitioner testified in his own defense, claiming that "he was visiting family and borrowed a rental car from his brother." *Id*. Petitioner also "asserted he did not know there were drugs in the car and was traveling to Las Vegas to gamble." *Id*.

The jury found Petitioner guilty of methamphetamine trafficking. He was sentenced to a unified term of 30 years in prison with 10 years fixed. *Id*. at 1.

On direct appeal, Petitioner challenged only his sentence. *B-1*. The Idaho Court of Appeals affirmed, and the Idaho Supreme Court denied review. *B-4*; *B-6*.

Petitioner then pursued relief through the state post-conviction process. In his post-conviction petition, Petitioner raised several claims ineffective assistance of counsel. As relevant here, Petitioner claimed his trial counsel (A) failed to present evidence in connection with Petitioner's motion to suppress the evidence found in the search of his car; (B) failed to admit evidence of the rental car agreement; (C) failed to introduce evidence of Petitioner's bank records; and (D) failed to call Brittany Gray as a witness at trial; and (E) failure to present other evidence corroborating Petitioner's version of events, including Petitioner's casino loyalty cards and testimony from relatives about Petitioner's gambling habits. *C-2* at 7–14. The state district court summarily dismissed the petition. *Id*. at 1129–49; *D-4*; *D-6*.

On appeal from the dismissal of his post-conviction petition, Petitioner argued that trial counsel provided ineffective assistance by failing to present evidence that would have corroborated Petitioner's testimony that he did not know the drugs were in the rental car he was driving. *D-1*; *D-3*. Petitioner did not challenge the initial post-conviction court's rejection of his claim that counsel should have presented additional evidence on the motion to suppress. The Idaho Court of Appeals affirmed, and the Idaho Supreme Court denied review. *D-4*; *D-6*.

In his federal Petition, Petitioner asserts two claims. Claim I alleges that trial counsel was ineffective in failing "to investigate and present evidence in support of the suppression motion." *Pet*. at 8. In Claim II, Petitioner asserts ineffective of trial counsel based on counsel's failure "to investigate and present evidence to show: (a) that Robinson's brother authorized him to drive the rental car; (b) that Robinson was speaking to a friend [Brittany Gray] when he was pulled over (to rebut the implication that he was talking to a drug connection); (c) that Robinson had actually withdrawn money from his bank account as he claimed; and (d) that he had casino cards, which would support that he was headed to Las Vegas to gamble." *Id*. at 11.

Respondent argues that Claim I is procedurally defaulted and that Claim II fails on the merits. For the reasons that follow, the Court agrees.

## DISCUSSION

### 1. Claim I is Procedurally Defaulted

Though Petitioner raised Claim I in his post-conviction petition in the Idaho district court, he did not raise it on appeal from the dismissal of that petition. The failure to raise a claim during a post-conviction appeal cannot constitute cause to excuse the procedural default of that claim, even if the default is the result of ineffective assistance of post-conviction appellate counsel. *Martinez v Ryan*, 566 U.S. 1, 16 (2012).

Accordingly, Claim I is procedurally defaulted without excuse and must be dismissed.

**2. Claim II Fails on the Merits**

In Claim II, Petitioner asserts he told trial counsel about evidence that would have corroborated Petitioner's testimony that he did not know about the drugs in the rental car—the only element of the offense that was contested at trial. Dkt. 1 at 10–11. Nonetheless, counsel failed to investigate, obtain, or present that evidence. The evidence consists of the following:

- The car rental agreement, repair receipt, and testimony of Mr. Robinson's brother, Lawrence. The rental agreement shows Lawrence Robinson rented the car. The repair receipt shows Lawrence's car was repaired early on October 22.

…

- Mr. Robinson's bank records. These records show that Mr. Robinson's savings account balance a few months before the trip was $23,000[,] and that he withdrew $10,500 in May 2019.

…

- The testimony of Mr. Robinson's friend, Ms. Gray. Ms. Gray could have testified that she had been talking to Mr. Robinson before the traffic stop, continued on the phone with him during the traffic stop, and that they did not talk about drug trafficking.

…

- Mr. Robinson's "player's cards" from various casinos and his brother's testimony that he was a frequent gambler.

Dkt. 15 at 11–12 (internal citations omitted).

Petitioner claims that this evidence would have supported Petitioner's testimony that he was going on a road trip to gamble rather than on a drug trafficking run (and as an explanation for the amount of cash the police discovered), that he used his brother Lawrence's rental car because Lawrence's own car was fixed earlier than expected (and not because of a nefarious drug-running purpose), and that he was talking on the phone to a friend (and not to any drug connections) before and during the stop.

### *A. Habeas Corpus Standards of Law*

A federal court may grant habeas corpus relief when it determines that the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). If the state court has adjudicated a claim on the merits, habeas relief is further limited by § 2254(d), as amended by the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under AEDPA, federal habeas relief must be denied unless the state court's adjudication of the petitioner's claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The term "unreasonable" in § 2254(d) is reserved for "extreme malfunctions in the state criminal justice system," not for "ordinary error" or even for cases "where the

petitioner offers a strong case for relief." *Mays v. Hines*, 592 U.S.385, 391 (2021) (per curiam) (internal quotation marks omitted). Accordingly, a federal court reviewing a state court's adjudication of a claim on the merits "must carefully consider all the reasons and evidence supporting the state court's decision." *Id*. Courts are not permitted "to essentially evaluate the merits *de novo* by omitting inconvenient details from its analysis." *Id*. at 392 (internal quotation marks and alteration omitted). Instead, "[d]eciding whether a state court's decision involved an unreasonable application of federal law or was based on an unreasonable determination of fact requires the federal habeas court to train its attention on the particular reasons—both legal and factual—why state courts rejected a state prisoner's federal claims and to give appropriate deference to that decision." *Wilson v. Sellers*, 584 U.S. 122, 125 (2018) (internal quotation marks and citations omitted).

When a petitioner contests the state court's legal conclusions, including application of the law to the facts, § 2254(d)(1) governs. That section consists of two tests: the "contrary to" test and the "unreasonable application" test.

Under the first test, a state court's decision is "contrary to" clearly established federal law "if the state court applies a rule different from the governing law set forth in [the Supreme Court's] cases, or if it decides a case differently than [the Supreme Court] [has] done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002). Under the second test, to satisfy the "unreasonable application" clause of § 2254(d)(1), the petitioner must show that the state court—although identifying "the correct governing legal rule" from Supreme Court precedent—nonetheless "unreasonably

applie[d] it to the facts of the particular state prisoner's case." *Williams v. Taylor*, 529 U.S. 362, 407 (2000). "Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies [Supreme Court] precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error." *White v. Woodall*, 572 U.S. 415, 426 (2014) (emphasis omitted).

The AEDPA standard is extraordinarily high, and a federal court cannot grant habeas relief simply because it concludes in its independent judgment that the state court's decision is incorrect or wrong. Rather, the state court's application of federal law must be objectively unreasonable to warrant relief. *Williams*, 529 U.S. at 411. If there is *any* possibility that fair-minded jurists could disagree on the correctness of the state court's decision, § 2254(d)(1) precludes relief. *Nevada v. Jackson*, 569 U.S. 505, 508–09 (2013); *Harrington v. Richter*, 562 U.S. 86, 101–02 (2011). In other words, if one fair-minded jurist could agree that the state court's decision is reasonable, habeas relief must be denied—even if other fair-minded jurists would disagree.

"Clearly established federal law" means the governing legal principles set forth in the holdings—not the dicta—of the United States Supreme Court, as of the time the state court rendered its decision. *Williams*, 529 U.S. at 412. The habeas statute does not require an *identical* factual pattern before a legal rule must be applied. Rather, state courts must reasonably apply the rules squarely established by the Supreme Court's holdings to the facts of each case. *See White*, 572 U.S. at 427.

A federal habeas court "may not overrule a state court for … holding a view different from its own" when the precedent from the Supreme Court "is, at best,

ambiguous." *Mitchell v. Esparza*, 540 U.S. 12, 17 (2003). Circuit precedent may be persuasive authority for determining whether a state court decision is an unreasonable application of Supreme Court precedent. *Duhaime v. Ducharme*, 200 F.3d 597, 600–01 (9th Cir. 2000). But a federal court may not use circuit law to refine or sharpen a general principle of Supreme Court habeas corpus jurisprudence into a specific legal rule that the Supreme Court itself has not announced. *Lopez v. Smith*, 574 U.S. 1, 7 (2014) (per curiam).

To be eligible for relief under § 2254(d)(2), the petitioner must show that the state court decision was based upon factual determinations that were "unreasonable ... in light of the evidence presented in the State court proceeding." A "state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010); *see also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold.").

Instead, state court factual findings are presumed to be correct and are binding on the federal court unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see Kirkpatrick v. Chappell*, 950 F.3d 1118, 1131 (9th Cir. 2020) (holding that § 2254(e)(1) "appears to apply to all factual determinations made by state courts"). "If reasonable minds reviewing the record might disagree about the

finding in question," the finding is not unreasonable under § 2254(d)(2). *Pizzuto v. Yordy*, 947 F.3d 510, 530 (9th Cir. 2019) (internal quotation marks and alterations omitted).

If a petitioner satisfies § 2254(d)—either by showing that the state court's adjudication of the claim was contrary to or an unreasonable application of Supreme Court precedent under subsection (d)(1), or by establishing the state court's decision was based on an unreasonable factual finding under subsection (d)(2)—then the federal habeas court must review the petitioner's claim de novo, meaning without deference to the state court's decision. *Hurles v. Ryan*, 752 F.3d 768, 778 (9th Cir. 2014).

Even under de novo review, however, if the factual findings of the state court are not unreasonable under § 2254(d)(2), the Court must apply the presumption of correctness found in 28 U.S.C. § 2254(e)(1) to any facts found by the state courts. *Pirtle v. Morgan*, 313 F.3d 1160, 1167–68 (9th Cir. 2002); *Kirkpatrick*, 926 F.3d at 1170 ("Unlike § 2254(d), § 2254(e)(1)'s application is not limited to claims adjudicated on the merits [by a state court]."). Conversely, if a state court factual determination is unreasonable, the federal court is not limited by § 2254(e)(1) and may consider evidence outside the state court record, except to the extent that § 2254(e)(2) might apply. *See Murray*, 745 F.3d at 1000.

### ***B. Clearly Established Law***

The Sixth Amendment to the United States Constitution provides that a criminal defendant has a right to the effective assistance of counsel in his defense. The Supreme Court explained the standard for ineffective assistance claims in *Strickland v. Washington*, 466 U.S. 668 (1984). A petitioner asserting ineffective assistance of counsel

must show that (1) "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and (2) those errors prejudiced the defendant by "depriv[ing] the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687. A petitioner must establish both deficient performance and prejudice to prove an ineffective-assistance claim. *Id.* at 697. On habeas review, a court may consider either prong of the *Strickland* test first, or it may address both prongs, even if one prong is not satisfied and would compel denial of the ineffectiveness claim. *Id.*

Whether an attorney's performance was deficient is judged against an objective standard of reasonableness. *Id.* at 687–88. A reviewing court's inquiry into the reasonableness of counsel's actions must not rely on hindsight:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.

*Id.* at 689 (internal citations and quotation marks omitted).

Strategic decisions "are virtually unchallengeable" if "made after thorough investigation of law and facts relevant to plausible options." *Id*. at 690. Moreover, an attorney who decides not to investigate a potential defense theory is not ineffective so long as the decision to forego investigation is itself objectively reasonable:

> [S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Id.* at 690–91. That is, "the duty to investigate does not force defense lawyers to scour the globe on the off chance something will turn up; reasonably diligent counsel may draw a line when they have good reason to think further investigation would be a waste." *Rompilla v. Beard*, 545 U.S. 374, 383 (2005).

If a petitioner shows that counsel's performance was deficient, he must also show that the deficient performance caused prejudice. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. To satisfy the prejudice standard, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. As the *Strickland* Court instructed:

> In making this determination, a court hearing an ineffectiveness claim must consider the totality of the

> evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors.

*Id.* at 695–96. To constitute *Strickland* prejudice, "[t]he likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

The foregoing standard, giving deference to counsel's decision-making, is the de novo standard of review. Another layer of deference—to the state court decision—is afforded under AEDPA. In giving guidance to federal courts reviewing *Strickland* claims on habeas corpus review, the United States Supreme Court has explained:

> The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), "an unreasonable application of federal law is different from an incorrect application of federal law." *Williams*, *supra*, at 410, 120 S. Ct. 1495. A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

*Richter*, 562 U.S. at 101.

In other words, when evaluating an ineffectiveness claim under § 2254(d), this Court's review of that claim must be "doubly deferential." *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011) (internal quotation marks omitted). Because *Strickland* itself "is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009); *see also Shinn v. Kayer*, 592 U.S. 111, 119 (2020) (per curiam) ("We have recognized that the more general the rule, the more leeway state courts have [in deciding constitutional claims].") (internal quotation marks omitted).

### *C. Decision of the Idaho Court of Appeals*

The Idaho Court of Appeals first addressed Petitioner's claim that counsel should have presented evidence of the rental car agreement, which would purportedly have corroborated Petitioner's testimony that his brother Lawrence rented the car because Lawrence's own car was in an accident, and that Lawrence permitted Petitioner to use the rental car because Lawrence's own car was ready earlier than expected and there was time before the rental car had to be returned. The court agreed with the state that this evidence "hurts as much as helps" Petitioner's contention that was not using the rental car to transport drugs:

> The rental agreement started long after Lawrence dropped off his car for repairs, suggesting the purpose of the rental was not prompted by the repair. The rental agreement provided a return date, three days before Lawrence picked up his car and five days before Robinson was arrested, contradicting Robinson's claim that there was more time left on the rental.

*D-4* at 6. Given these conflicting potential inferences from the evidence, the court held that trial counsel's decision not to present the rental car agreement was a reasonable strategic decision. *Id*. ("[W]e presume trial counsel's decision not to use the rental car documentation was strategic and not based on inadequate preparation, ignorance of relevant law, or other shortcomings capable of objective evaluation.").

Next, the state court considered the evidence that Petitioner was speaking to his friend Gray, not to any drug connections, during the stop:

> The arresting deputy testified that while Robinson may have been talking to Gray at one point, he appeared to contact several people during the stop, which inferred [sic] that Robinson called trafficking cohorts. Robinson testified he did not call trafficking collaborators but maintained one call with Gray during the stop. Gray's declaration states that she was talking to Robinson before and at the time of the stop.

*Id*. The court of appeals found that "nothing in the Gray declaration forecloses that Robinson also talked to other individuals on the phone during the stop." *Id*. Noting that the "choice of witnesses and the manner of examination are matters within the discretion of trial counsel," the court declared it would "not second-guess counsel's strategic decision not to call Gray to rebut the deputy's testimony." *Id*. at 6–7.

With respect to Petitioner's bank records, the Idaho Court of Appeals noted that the prosecution had introduced some of Petitioner's Facebook posts suggesting Petitioner had less than $200 in his checking account. However, Petitioner claimed that the $8,500 found in his pockets was money he had withdrawn from his *savings* account. These records, Petitioner argued, would have bolstered his claim that he did not earn the money by being a drug mule but, instead, withdrew it from his own account. The state court

found that the records were of limited evidentiary value because they showed "large cash withdrawals from May but not the weeks or days leading up to the stop in October." *Id*. at 7. The court found that because the bank records "did not explain why Robinson had large sums months after his [last] withdrawal." *Id*. Thus, trial counsel's decision not to utilize this evidence "was part of sound trial strategy." *Id*.

Finally, the state appellate court addressed the evidence that Petitioner had casino loyalty cards. The court held that, although the cards "might have corroborated Robinson's gambling and driving route," they "would not have called into question any of the material elements of the trafficking charge." *Id*. Evidence that Robinson was a gambler did "not rebut the State's evidence indicating he operated as a trafficker even if it aligned with Robinson's story." *Id*. The court concluded that, "in the face of the evidence that Robinson's belongings were in the back seat area, *as was the methamphetamine*," trial counsel reasonably decided not to present evidence of the casino loyalty cards. *Id*. (emphasis added).

The Idaho appellate court held that trial counsel's decisions not to pursue the above-described evidence did not constitute deficient performance. The court also concluded that, even if trial counsel had performed deficiently, Petitioner could not show *Strickland* prejudice. *Id*. at 8 ("[A]ny error adds little prejudice to the cumulative mix and the cumulative prejudice does not provide a reasonable probability sufficient to undermine confidence in the outcome, as *Strickland* requires. Robinson has failed to show an issue of material fact regarding prejudice based on a lack of substantial

likelihood that the result of the trial would have been different had the proposed evidence been presented.") (internal quotation marks, citation, and alteration omitted).

### *D. The State Court's Rejection of Claim II Was Not Unreasonable under 28 U.S.C. § 2254(d)*

For the following reasons, the Court concludes that the Idaho Supreme Court did not unreasonably apply federal law in adjudicating Claim II.[1]

The Idaho Court of Appeals correctly cited *Strickland* as the governing legal standard for Petitioner's ineffectiveness claims. *D-4* at 3–4, 7–8. The court carefully considered all of the proffered evidence and reasonably concluded that counsel's decision not to pursue it was part of a reasonable trial strategy. The court also reasonably determined that Petitioner had not established prejudice.

The rental car agreement was a double-edged sword. Introducing this evidence may have supported Petitioner's claim that his brother authorized him to drive the car. But it also easily could have impeached Petitioner's testimony regarding the reason for the rental. Gray's declaration that she was speaking to Petitioner on the phone during the stop might have corroborated Petitioner's claim that he was not speaking to a drug connection, but it has nothing to do with whether he knew the drugs were in the car. Petitioner's bank records would have shown Petitioner had a substantial balance in his savings account and made a substantial withdrawal in May, which says very little about how he ended up with $8,500 when he was arrested several months later in October. And

[1] Petitioner does not argue that the state court's decision was based on an unreasonable finding of fact. *See generally* Dkt. 15.

Petitioner's casino cards would have added nothing to Petitioner's defense. The fact that Petitioner was a gambler does not indicate that he was not also trafficking in methamphetamine. Further, none of this evidence addresses the other drug trafficking indicia noted by law enforcement: the food wrappers, water and energy drink bottles, and the fact that Petitioner had very little luggage for what he claimed was a long road trip. The evidence certainly does not call into doubt the fact that Petitioner's belongings were in the same area of the car as the drugs—the drugs he claimed he did not see and did not know were there.

The question is not whether trial counsel could have done more, but whether the state court reasonably determined that trial counsel provided adequate representation and that, even if counsel had presented the proffered evidence, it was not reasonably likely that the result of the trial would have been different. *See* 28 U.S.C. § 2254(d). Given the double deference that applies to the decision of the Idaho Court of Appeals, the Court concludes that fair-minded jurists could agree with that court's analysis. *See Pinholster*, 563 U.S. at 190. Accordingly, the state court's decision on Claim II was reasonable, precluding federal habeas relief.

## CONCLUSION

For the foregoing reasons, Claim I of the Petition is procedurally defaulted without excuse, and Claim II fails on the merits.

## ORDER

**IT IS ORDERED:**

1. The Petition for Writ of Habeas Corpus (Dkt. 1) is DISMISSED IN PART AND DENIED IN PART, and this entire action is DISMISSED with prejudice.

2. The Court does not find its resolution of this habeas matter to be reasonably debatable and, therefore, will not issue a certificate of appealability. *See* 28 U.S.C. § 2253(c); Rule 11 of the Rules Governing Section 2254 Cases.

DATED: October 23, 2026

Honorable Debora K. Grasham
United States Magistrate Judge